UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JESUS RETANA and ANDREW MOSS, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-0359-B |
| TWITTER, INC., FACEBOOK, INC., and GOOGLE, LLC, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Facebook, Inc., Google, LLC, and Twitter, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 38).

This case is the latest in a string of lawsuits that Plaintiffs' lawyers have brought in an attempt to hold social media platforms responsible for tragic shootings and attacks across this country—by alleging that the platforms enabled international terrorist organizations to radicalize the attacks' perpetrators. In fact, Plaintiffs' lawyers brought a suit in the Northern District of California, *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874 (N.D. Cal. 2017), concerning the same Dallas shooting this Court is confronted with here, albeit with different plaintiffs. The court in that case dismissed the claims with prejudice, finding that there was no connection between the shooting and Hamas, the terrorist organization at issue. *Id.* at 892. Yet, Plaintiffs' counsel made no mention of that case in their briefing; counsel discussed the case only after the Court questioned about it at oral argument. *See* Unoff. Tr., 14:11–16:21.

The Court dismisses this lawsuit with prejudice. Although the complaint here alleges additional facts not found in *Pennie*, the complaint nonetheless suffers from many of the same deficiencies discussed in *Pennie*. Plaintiffs here have not and after multiple attempts, clearly cannot connect Hamas to the Dallas shooting.

For the reasons that follow, the Court **GRANTS** Defendants' motion to dismiss (Doc. 38), and hereby **DISMISSES** Plaintiffs' claims **WITH PREJUDICE**.

## I.
## BACKGROUND

The facts here are taken from the Second Amended Complaint (SAC), and disputed facts are noted as such. On July 7, 2016, Micah Johnson attacked and killed five police officers, and injured nine others, in Dallas, Texas. Doc. 36, Second Am. Compl., ¶ 1. Among those injured was Plaintiff Jesus Retana, who was shot in his left arm and required surgery for the removal of a bullet. *Id.* ¶ 16. Plaintiff Andrew Moss is Retana's husband and has suffered severe emotional distress from his husband's injuries. *Id.* ¶ 17.

Plaintiffs allege that Defendants are liable for their injuries because they provided material support to Hamas, which carried out the Dallas attack by radicalizing Johnson. *Id.* ¶¶ 1, 8.[1]

According to Plaintiffs, Hamas was founded in December 1987 during the First Intifada (or "uprising") against Israel, as an offshoot of the Muslim Brotherhood. *Id.* ¶¶ 23–24. As part of its mission, Hamas has "carried out thousands of terrorist attacks in Israel, the West Bank, and Gaza, murdering hundreds of Israeli and U.S. citizens," as well as citizens from other countries. *Id.* ¶ 28.

---

[1]Notably, paragraph one of the SAC actually states that Defendants gave material support "to *ISIS*, the notorious designated foreign terrorist organization that carried out the July 7, 2016" Dallas attack. *Id.* (emphasis added).

Hamas was designated a Foreign Terrorist Organization (FTO) under 8 U.S.C. § 1189 in 1997, and a Specially Designated Global Terrorist in 2001 pursuant to Executive Order 13224. *Id.* ¶¶ 78–80.

Plaintiffs allege that Defendants have given Hamas material support by enabling it to recruit and spread its messages on Defendants' social media sites. *Id.* ¶ 8. Plaintiffs believe that "HAMAS reaches potential recruits by maintaining accounts on Twitter, Youtube,[2] and Facebook so that individuals across the globe may reach out to them directly." *Id.* ¶ 83. For example, Hamas has three Twitter accounts: an English-language account with 37,000 followers, an Arabic-language account with 281,000 followers, and another account with just under 10,000 followers. *Id.* ¶ 10–12. Additionally, Plaintiffs believe that Google shares revenue from advertisements placed on Hamas videos with Hamas. *Id.* ¶ 98. Thus, Plaintiffs allege that "[t]hrough Defendants' Platforms and Services, HAMAS leaders, operatives, and recruits are able to make themselves available to HAMAS for HAMAS's terrorist activities." *Id.* ¶ 165.

To connect Hamas—and by extension Defendants—to the Dallas shooting, Plaintiffs allege that Defendants' social media platforms have enabled Hamas to influence "black separatist hate groups,"[3] who in turn radicalized Johnson. *See id.* ¶¶ 216–34. For example, "HAMAS sympathizers and members" gave advice and support to police protesters in Ferguson, Missouri. *Id.* ¶ 217. As evidence of Hamas's influence on these groups, Plaintiffs show a photograph of the beheading of a police officer, which was apparently photoshopped from a photograph of a Hamas member beheading another individual. *Id.* ¶ 218. Moving on, Plaintiffs allege that Hamas and the "black separatist hate

---

[2]Google and Youtube are used interchangably throughout the complaint. Doc. 36, Second Am. Compl., ¶ 20.

[3]Because Plaintiffs use this term throughout the SAC, the Court will use the term throughout its Order. Doing so does not reflect the Court's views on such groups.

groups" communicated and met with each other. For instance, Plaintiffs allege that members of different "black separatist hate groups" went on a ten-day trip to Palestinian territories and Israel in 2015, wherein they participated in a riot against Israeli soldiers and police officers. *Id.* ¶¶ 222–23. Additionally, the Palestinian BDS Movement—which seeks boycotts, divestments, and sanctions against Israel—"reiterated its support for the growing Black Lives Matter movement." *Id.* ¶ 225.

These "black separatist hate groups," in turn, called for the shooting of police officers. *Id.* ¶¶ 226–30. Apparently "MAS leader Khalilah Sabra" and Nihad Awad, leader of the Council on American-Islamic Relations (CAIR) supported these protests. *Id.* ¶¶ 231–32.[4] Johnson was then allegedly "radicalized, in part, by these organizations calling for the murders of police officers" and by Hamas's postings on Defendants' social media platforms. *Id.* ¶¶ 234, 249. For example, Plaintiffs allege that Johnson "liked" the Facebook pages of the New Black Panther Party, Nation of Islam, and Black Riders Liberation Army, "three groups which are listed by the [Southern Poverty Law Center] as hate groups." *Id.* ¶ 250 (quotations omitted). Johnson also liked the Facebook pages of the African American Defense League, which called for the murder of police officers, and Elijah Muhammed, the leader of the Nation of Islam. *Id.* ¶¶ 252–53. Five days before the shooting, Johnson posted on Facebook a "rant" against white people, while a day before the shooting, the African American Defense League said it was "time to act." *Id.* ¶¶ 255, 264. Thus, according to Plaintiffs, "Micah Johnson was radicalized by HAMAS's use of social media." *Id.* ¶ 278.

Finally, Plaintiffs also believe that Hamas directly radicalized Johnson. Plaintiffs allege that in 2014, Johnson had a conversation with a "Ms. X," whose name has been withheld for security reasons. *Id.* ¶¶ 235–36. In this conversation, Johnson allegedly told Ms. X that he had just returned

---

[4] The Court assumes that by "MAS," Plaintiffs mean "HAMAS."

from serving in the army in Afghanistan, and that he "was very much pro-Gaza." *Id.* ¶ 236. Johnson explained that Palestinians were justified in their use of force against Israel. *Id.* ¶ 237. He pointed Ms. X to a Twitter page that contained Hamas messages and called for the destruction of Israel, which led Ms. X to "believe[] that he had been radicalized to the Palestinian cause supporting violence against Israel." *Id.* ¶¶ 238–39.[5] Based on these conversations, Plaintiffs believe that "approximately two years before the Dallas attack, Micah Johnson was directly radicalized by Hamas." *Id.* ¶ 240.

From these allegations, Plaintiffs bring seven claims against Defendants: (1) aiding and abetting acts of international terrorism in violation of the Antiterrorist Act, 18 U.S.C. § 2333 (ATA)(secondary liability); (2) conspiring in furtherance of acts of international terrorism in violation of the ATA (secondary liability); (3) providing material support in violation of 18 U.S.C. § 2339(a) and the ATA (direct liability); (4) providing material support and resources to a designated FTO in violation of 18 U.S.C. § 2339B(a)(1) and the ATA (direct liability); (5) concealing material support and resources to a designated FTO in violation of 18 U.S.C. § 2339C(c) and the ATA (direct liability); (6) providing funds, goods, or services to or for the benefit of specially designated global terrorists in violation of Executive Order No. 13224, 31 C.F.R. Part 594, 50 U.S.C. § 1705, and the ATA (direct liability); and (7) the negligent infliction of emotional distress (NIED). *Id.* ¶¶ 292–332.

Defendants filed a motion to dismiss (Doc. 38). All briefing has been submitted, and the Court held a hearing on the motion on November 11, 2019. *See* Doc. 56. At the hearing, the Court

---

[5] At the hearing, Plaintiffs' counsel explained that "Palestinian cause" means Hamas. Unoff. Tr., 16:14–16.

dismissed Plaintiffs' claims with prejudice. Unoff. Tr., 65:5–9. This Order explains the Court's reasoning.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." *Id.* 12(b)(6). To survive a 12(b)(6) motion, "enough facts to state a claim to relief that is plausible on its face" must be pled. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). At this stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *J&J Sports Prods., Inc. v. Live Oak Cty. Post No. 6119 Veterans of Foreign Wars*, 2009 WL 483157, at *3 (S.D. Tex. Feb. 24, 2009) (quotation marks omitted) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007) (citation omitted)).

The Fifth Circuit has held that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation and quotation marks omitted). Essentially, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain

allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation and quotation marks omitted).

## III.
## ANALYSIS

The ATA provides a private right of action to any United States national who has been injured "by reason of an act of international terrorism . . . ." 18 U.S.C. § 2333(a). This section imposes direct civil liability on those who commit acts of international terrorism. *Crosby v. Twitter, Inc.*, 921 F.3d 617, 622 (6th Cir. 2019). Acts of international terrorism are those that (1) "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State"; (2) "appear to be intended . . . to intimidate or coerce a civilian population" or influence governmental policy through "intimidation or coercion"; and (3) "transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum . . . ." 18 U.S.C. § 2331(1).

The Justice Against Sponsors of Terrorism Act (JASTA) amended 18 U.S.C. § 2333 to include § 2333(d), a secondary liability provision. JASTA § 4(d)(2), Pub. Law 114–222, 130 Stat. 852, 854 (2016). This subsection holds those who "aid[] and abet[] . . . or . . . conspire[] with" a foreign terrorist organization who "committed, planned, or authorized" an act of international terrorism liable for an injury stemming from that underlying act of international terrorism. § 2333(d)(2).

A.      *Whether Plaintiffs Were Injured "by reason of" an Act of International Terrorism*

Section 2333(a)'s "by reason of" standard applies to both the direct and secondary liability claims. *See* § 2333(d)(2) (creating secondary liability in "an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that ha[s] been designated as" an FTO). Both parties stipulate that "by reason of" equates to proximate cause. *See* Doc. 39, Defs.' Br., 8; Doc. 44, Pls.' Resp., 11. Thus, if there are no allegations sufficient to establish proximate cause, the direct and secondary liability claims against Defendants must be dismissed.

The parties dispute what the proximate-cause standard is, and whether it has been properly pled here. Defendants point to *Fields v. Twitter*, 881 F.3d 739 (9th Cir. 2018) and *Crosby v. Twitter, Inc.*, 921 F.3d 617 (6th Cir. 2019) for the appropriate standard. In *Fields*, the Ninth Circuit interpreted the "by reason of" standard as requiring "at least some direct relationship between the injuries that he or she suffered and the defendant's acts." *Fields*, 881 F.3d at 744. The court there believed that a "reasonably foreseeable" or "natural consequence" test would allow for too much liability under the ATA. *Id.* (quotation marks omitted).

In *Crosby*, the Sixth Circuit applied the "by reason of" standard through a combination of "substantiality, directness, and foreseeability" that put "a particular emphasis on the demand for some direct relation between the injury asserted and the injurious conduct alleged." 921 F.3d at 624 (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) (citation omitted)).

Importantly, the court noted that "Defendants do not proximately cause all [] potential ripples [of harm]" from their alleged wrongdoing. *Id.* at 625 (alterations added).[6]

Defendants argue that Plaintiffs' attempts to connect Defendants to the Dallas shooting "fail[] to establish any direct link between Hamas and the shooting." Doc. 39, Defs.' Br., 9. Defendants rely on *Pennie*, where the district court held that "the clearest break in the causal chain . . . lies between Hamas and the Dallas attack." 281 F. Supp. 3d at 886. For example, Defendants point out that the SAC does not allege that Hamas accounts or content on Defendants' websites helped coordinate the attack, or that those responsible for the attack used Defendants' platforms to help execute the attack. Doc. 39, Defs.' Br., 10. Defendants believe that the only relevant differences between this case and *Pennie* are two new allegations here: (1) that Johnson once saw Hamas-related content regarding Israel, *id.* at 10–11, and (2) that Johnson met with Ms. X. Unoff. Tr., 42: 14–22. Defendants contend that these allegations do not establish a connection between Hamas and the shooting. Doc. 39, Defs.' Br., 10; Unoff. Tr., 42:23–43:3.

On the other hand, Plaintiffs argue that the ATA does not require the level of directness that Defendants assert it does. Doc. 44, Pls.' Resp., 11. Plaintiffs explain that in *Linde v. Arab Bank, PLC*, the Second Circuit rejected a challenge to the sufficiency of evidence supporting causation, noting that the defendants who provided material support to the FTO in question—also Hamas—could not dispute that Hamas committed the attacks that caused the injuries in question. Doc. 44, Pls.' Resp., 11 (citing 882 F.3d 314, 326 (2d Cir. 2008)). Plaintiffs argue that "[t]ranslated into the Rule 12(b)(6) setting, *Linde*'s proximate cause test asks a singular question: whether the operative

---

[6] The Sixth Circuit seems to have adopted its proximate cause standard from the Seventh and D.C. Circuits. *See id.*

pleading plausibly alleges that the designated FTO perpetrated the attack causing the plaintiff's injuries." *Id.*

Plaintiffs believe that the only causal connection needed to establish proximate cause is between the FTO that received a defendant's material support and the plaintiff's injuries; in other words, Plaintiffs argue that the material support need not be for the specific attack that took place. *See id.* at 11–12. Plaintiffs assert that In *Boim v. Holy Land Foundation for Relief and Development* ("*Boim III*"), the Seventh Circuit looked to whether the defendant's conduct "significantly enhanced the risk of terrorist acts and thus the probability" that the plaintiff would be injured. *Id.* (quoting 549 F.3d 685, 698 (7th Cir. 2008)). And in *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010), Plaintiffs explain, the district court denied a motion to dismiss predicated on causation, as the defendant there knew that the terrorist organization was using its services solely to commit terrorist attacks. *Id.* at 12 (citing *Wultz*, 755 F. Supp. 2d at 53).

Lastly, Plaintiffs argue that JASTA amended the ATA to "impos[e] liability . . . at any point along the causal chain of terrorism." *Id.* at 13 (alteration in original) (citation and quotation marks omitted). JASTA, Plaintiffs contend, is intended to hold those who were indirectly responsible liable for terrorist attacks. *See id.* at 14. It is on this ground that they find error with Defendants' reliance on *Fields*: Plaintiffs argue that the court in *Fields* never considered JASTA, and thus its "'direct relationship' test" is incorrect. *Id.* at 14.

At oral argument, Plaintiffs' counsel outlined its theory of proximate causation: Defendants' material support to Hamas enabled it to radicalize Johnson, who because of Hamas's efforts, committed the attack. Unoff. Tr., 56: 4–13. Defendants' material support was a reason that the attack took place. Doc. 36, Second Am. Compl., ¶ 8. Thus, according to Plaintiffs, the "by reason

of" standard is met when, at some point, a defendant provides material support to the FTO that committed the attack. Doc. 44, Pls.' Resp., 11–12.

The Court concludes that Plaintiffs have not demonstrated proximate cause, for two reasons. First, the proper proximate cause standard requires some degree of directness between the material support and the attack that caused Plaintiffs' injuries. Applying this standard, the Court concludes that Plaintiffs fail to plead a sufficient connection between Defendants' material support and the Dallas shooting. Second, even if the Court were to apply Plaintiffs' proposed standard, Plaintiffs fail to establish a proper connection between Hamas and the shooting. The Court takes both of these reasons in turn.

First, the Court does not believe that Plaintiffs' proposed proximate causation standard is supported by case law or the ATA's statutory language. The language in *Linde* cited by Plaintiffs concerns secondary liability, not the proximate cause standard. *See Linde*, 882 F.3d at 331. Additionally, the expansive language in *Boim III*—which was merely used in response to a hypothetical posed by the court, see 549 F.3d at 698— was clarified in *Kemper v. Deutsche Bank AG*, where the Seventh Circuit explained that the proximate cause inquiry requires consideration of "foreseeability, directness, and the substantiality of the defendant's conduct," as "directness and foreseeability are logically linked." 911 F.3d 383, 391–92 (7th Cir. 2018). Thus, Plaintiffs do not cite any case law that supports their contention that there need not be a direct relationship between the material support given and the alleged attack. Finally, Plaintiffs misconstrue JASTA. JASTA amended the ATA to include secondary liability by adding 18 U.S.C. § 2333(d). It did not amend the proximate causation standard set out in § 2333(a). JASTA only expanded *who* could be liable for a plaintiff's injuries; it "did not alter any existing provisions of section 2333." *Crosby v. Twitter*,

*Inc.*, 303 F. Supp. 3d 564, 573 (E.D. Mich. 2018). Therefore, Plaintiffs' contention that *Fields* is not instructive because it failed to consider JASTA's implication on proximate cause is unavailing—and in fact unpersuasive, as *Fields* was decided *after* JASTA's passage.

Instead, the Court finds that the appropriate proximate cause standard requires some sort of direct connection between Defendants' alleged material support and the Dallas shooting. *See Crosby*, 921 F.3d at 624; *Fields*, 881 F.3d at 744; *Kemper*, 911 F.3d 391–92. The new allegations in the SAC—specifically, the conversation between Ms. X and Johnson—do not establish such a connection. Johnson allegedly told Ms. X "that he had just returned from being in the army and was very much pro-Gaza" and "that the Palestinians were justified in using 'dirty tactics' . . . against Israel." Doc. 36, Second Am. Compl., ¶¶ 236–37. Moreover, "Johnson directed Ms. X to a Twitter page" that "call[ed] for the destruction of Israel and reflected Hamas messages." *Id.* ¶ 238. From this conversation, Ms. X believed Johnson had been radicalized to support the "Palestinian cause [of] . . . violence against Israel." *Id.* ¶ 239. Based on these allegations, Plaintiffs conclude that "approximately two years before the Dallas attack, Micah Johnson was directly radicalized by Hamas." *Id.* ¶ 240.

At the hearing, Plaintiffs' counsel stated that the "Palestinian cause" was equivalent to Hamas. Unoff. Tr., 16:14–16. But even if Hamas was the entity that radicalized Johnson in 2014, these allegations do not establish proximate cause: the conversation with Ms. X makes no mention of Defendants' social media accounts—thereby undercutting the sort of "directness" required for proximate cause. *See, e.g.*, *Kemper*, 911 F.3d at 392 (explaining how the proximate cause analysis requires consideration of "foreseeability, *directness*, and the substantiality of the defendant's conduct"

because "directness and foreseeability are logically linked")(emphasis added). Thus, the new allegations fail to establish the direct connection required to plead proximate cause.

Yet, Plaintiffs counsel maintains its position that "Micah Johnson didn't even need to look at a single posting of the three defendants for there to be liability here. . . . If there is a connection between Hamas and Micah Johnson . . . we believe these defendants would be liable." Unoff. Tr., 25:6–12. But even under Plaintiffs' proximate-cause standard, Plaintiffs' alleged facts—both old and new—fail to support a sufficient connection between Hamas and the Dallas attack.

As the court in *Pennie* aptly noted, even in cases where courts found causation under a relaxed standard, "while the connection between the particular support provided and the attack was arguably tenuous, the connection between the terrorist organization and the attack was not." *Id.* at 886 (citing *Boim III*, 549 F.3d at 687). Applying this lower standard, the court there concluded that Plaintiffs failed to "meaningfully allege that Hamas itself carried out the attack, or even that it intended for such an attack to occur." 281 F. Supp. 3d at 886–87.

The court in *Pennie* provided several reasons for this conclusion. First, the plaintiffs' allegations that non-Hamas groups supported protests concerning police treatment of African Americans did not mean that Hamas supported these protests. *Id.* at 886. Second, the fact that Johnson interacted with other groups online did not establish "any connection between Hamas and any of th[e]se group[s]." *Id.* at 887. Third, allegations that black separatists went on a ten-day trip to Palestinian territories was not sufficient to show that Hamas or Johnson participated in the trip. *Id.* Fourth, that a black separatist group repurposed a Hamas photograph of a beheading did not demonstrate that Hamas engaged in the re-purposing, or that Johnson saw the photograph. *Id.* Fifth,

the plaintiffs failed to "allege that Hamas had or expressed any intent to facilitate attacks on police officers in the United States." *Id.* at 888.

The same can be said here. Plaintiffs' SAC relies on many of the same allegations. Some paragraphs allege that Johnson was radicalized by other groups, not Hamas. *See, e.g.*, Doc. 36, Second Am. Compl. ¶ 252 ("Johnson also 'liked' the Facebook page of the African American Defense League . . . ."). The SAC also repeats the same allegation about the ten-day trip to Palestinian territories and Israel, but again makes no mention of Hamas's or Johnson's involvement. *Id.* ¶¶ 222–23. In another paragraph, Plaintiffs allege that Hamas "sympathizers" supported police protesters through the social-media platforms. *Id.* ¶ 217. But this paragraph involves "sympathizers," not Hamas, and does not mention any combination of Johnson, Hamas, and the Dallas shooting. Additionally, although other paragraphs mention alleged Hamas-fronts supporting the police protests, these allegations fail to connect Hamas to the Dallas shooting, and fail to show how the support of such protests and "black separtist hate groups" were aimed at radicalizing Johnson or anyone else. *See, e.g.*, *id.* ¶ 232 (discussing the Council on American-Islamic Relations' support for the police protests); *id.* ¶ 218 (the same photograph of a police-officer beheading discussed in *Pennie*). And finally, other paragraphs are merely conclusory. *See, e.g.*, ¶ 249 ("On information and belief, Micah Johnson was radicalized, in part, by reviewing postings of HAMAS and other terrorist groups on the internet and Defendants' social media sites.").

Due to the similarities between the SAC and the complaint in *Pennie*, the Court inquired about which additional facts pled here, but not pled in *Pennie*, establish proximate cause. Unoff. Tr.,

14:11–19. Plaintiffs' counsel emphasized Johnson's conversation with "Ms. X." *Id.* at 14:24–15:2.[7] These allegations were described above. But even under Plaintiffs' proposed proximate cause standard, these new paragraphs likewise fail to connect Hamas to the Dallas attack in any meaningful way because they do not show that Hamas radicalized Johnson to commit attacks against police officers back in the United States. In fact, the SAC alleges quite the opposite: that Johnson was radicalized to support the "Palestinian cause [of] . . . violence *against Israel*." Doc. 36, Second. Am. Compl., ¶ 239 (emphasis added).

Additionally, the SAC adds information about Facebook's alleged admission that it is responsible for the content that is posted on its website. Doc. 36, Second Am. Compl., ¶ 121. Although this could show how Facebook might feel responsible for actions taken on its website, such allegations also fail to connect Hamas to the Dallas shooting or Johnson. Even if Johnson was influenced by Hamas, "Defendants do not proximately cause all [] potential ripples [of harm]" from their alleged wrongful acts. *Crosby*, 921 F.3d at 625.

Simply put, the SAC does not allege any facts that show that Hamas radicalized Johnson to commit the Dallas attack, not to mention by using Defendants' websites. Plaintiffs' injuries, therefore, were not "by reason of" Hamas, or Defendants' alleged support of Hamas. *See* 18 U.S.C. § 2333(a). And, "[b]ecause all of Plaintiffs' claims are based on Defendants alleged support of Hamas, the failure to allege a plausible casual connection between Hamas and the Dallas attack warrants dismissal of all claims." *Pennie*, 281 F. Supp. 3d at 888.

---

[7]Counsel also stated that "there are a lot more discussions of the connections between Hamas and the black separatist groups and Micah Johnson." Unoff. Tr., 14:22–24. But, as discussed, such allegations fail to connect Hamas to the Dallas shooting.

B.  *Whether the Dallas Shooting was an "Act of International Terrorism"*

Plaintiffs' secondary liability claims fail for an additional, yet similar, reason: Plaintiffs do not allege that the Dallas shooting was an act of international terrorism. Those who aid and abet, or conspire with, a person who committed "an act of international terrorism" can be held liable for injuries resulting from that underyling act of international terrorism. 18 U.S.C. § 2333(d). Acts of international terrorism must "transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum . . . ." 18 U.S.C. § 2331(1).

Defendants argue that the Dallas shooting was not an act of international terrorism because "Johnson, the shooting itself, and all the victims were located in Dallas," and Johnson never "traveled abroad in any way connected to the shooting." Doc. 39, Defs.' Br., 7. Defendants rely on the district court opinion in *Crosby*, in which the district court found that the Pulse Nightclub shooting in Orlando, Florida, was not an act of international terrorism. *Id.* (citing 303 F. Supp. 3d at 572–73, *aff'd*, 921 F.3d 617 (6th Cir. 2019)). Defendants argue that "as in *Crosby*, the 'only allegations . . . even hinting at some trans-national connection' are those that 'suggest, at most' that '[Hamas] posts information on the Internet' and that some such posts may have helped Johnson to self-radicalize." *Id.* (quoting *Crosby*, 303 F. Supp. 3d at 572–73) (alterations in original). However, to Defendants, the fact that Hamas may have inspired Johnson's attack is not relevant, as "the 'means' by which an attack is 'accomplished' is not what inspired it, but rather how it was executed." Doc. 47, Defs.' Reply, 1.

In response, Plaintiffs re-hash many of their proximate cause arguments—*e.g.*, that because Hamas uses social media platforms to spread its message, and used those platforms to radicalize and

recruit Johnson, Hamas's use of Defendants' platforms "transcends national boundaries in terms of the means by which they are accomplished and the persons [it] appear[s] intended to intimidate or coerce." Doc. 44, Pls.' Resp., 7–8 (quotation marks omitted). Plaintiffs believe that paragraphs 9, 234–72, 275–76, and 278 of the SAC, see Doc. 36, Second Am. Compl., plausibly allege that Hamas used Defendants' platforms "to radicalize and recruit Johnson." Doc. 44, Pls.' Br., 8. At the hearing, Plaintiffs' counsel also stated that "Hamas met with Micah Johnson and radicalized him before he came here," Unoff. Tr., 36:15–16, in apparent reference to the "Ms. X" allegations. *See* Doc. 36, Second Am. Compl., ¶¶ 235–40.

But as discussed above, these paragraphs do not establish Hamas's connection to the Dallas shooting. Paragraph nine, for example, does not even mention Johnson or the shooting. *See id.* ¶ 9. And not only do the Ms. X allegations assert in a conclusory manner that Hamas radicalized Johnson, they also do not state for what purpose Hamas radicalized Johnson. *See id.* ¶ 240. While the allegations show how Hamas's material might have influenced Johnson and his beliefs, they do not show how Hamas itself was involved in the Dallas shooting in any way.

Similarly, in *Crosby*, the district court held that the Pulse Night Club shooting in Orlando, Florida, was not an act of international terrorism, even when the shooter viewed ISIS videos online and ISIS claimed responsibility after the shooting. 303 F. Supp. 3d at 572–73, 576. The complaint failed "to show how [the shooter] carried out *this act* under ISIS's express direction." *Id.* at 573.

Here, the SAC is devoid of allegations connecting Hamas to the shooting, even after it occurred. There is no transnational component to Johnson's planning and execution of the shooting. Instead, this tragic shooting appears to be an act of domestic terrorism. *See* 18 U.S.C. 2331(5)(C) (explaining how an act of domestic terrorism is one that "occur[s] primarily within the territorial

jurisdiction of the United States"). Therefore, that the Dallas shooting was not an act of international terrorism is another ground for dismissal of the secondary-liability claim.

C.      *Whether Plaintiffs Adequately Plead a Negligent-Infliction-of-Emotional-Distress Claim*

Plaintiffs also bring a negligent-infliction-of-emotional-distress claim. Doc. 36, Second Am. Compl., ¶¶ 329–32. However, Texas law does not recognize such a claim. *Cook v. City of Dallas*, 2019 WL 459649, at *3 (N.D. Tex. Feb. 6, 2019) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993)). Therefore, this claim must be dismissed as well.

D.      *Whether to Grant Leave to Amend*

The Court concludes that giving leave to amend would be futile, and thus this case should be dismissed with prejudice. *See U.S. ex rel. Marcy v. Rowan Cos., Inc.*, 520 F.3d 384, 392 (5th Cir. 2008) (explaining how a district court can consider many factors, "including the futility of amending," in deciding whether to grant leave to amend). Here, Plaintiffs have filed three complaints in total. *See* Doc. 1, Compl.; Doc. 24, First Am. Compl; Doc. 36, Second Am. Compl. Additionally, Plaintiffs' counsel amended their complaint once in *Pennie*. *See Pennie*, 281 F. Supp. 3d at 876 (describing the case's procedural history). Plaintiffs' counsel at the hearing also admitted that if this Court were to agree with *Pennie*'s analysis, Plaintiffs would not have any more allegations to cure the deficiencies at this time. Unoff. Tr., 64:1–3. Accordingly, this Court finds that granting leave to amend would be futile. Although Plaintiffs' arguments are novel, they have been rejected various times and are based on a strained reading of the ATA. Therefore, the Court hereby **DISMISSES** Plaintiffs' claims **WITH PREJUDICE**.

IV.

CONCLUSION

The Court relies on the lack of proximate cause and the fact that the Dallas shooting was not an act of international terrorism as alleged as its bases for dismissing Plaintiffs' ATA claims. And as discussed, the NIED claim must also be dismissed as incognizable under Texas law. Therefore, the Court need not address the parties' arguments as to immunity under the Communications Decency Act, 47 U.S.C. § 230(c)(1), and the other elements of the ATA civil cause of action.

Plaintiffs' counsel argued that Defendants should do more to stop terrorist organizations from using their platforms. Unoff. Tr., 54:3–12. From a policy perspective, this Court sympathizes with these arguments. But this Court's role is not to make policy; that job is left to Congress. Instead, this Court's role is to interpret the laws that Congress passes. For the foregoing reasons, Defendants' motion to dismiss (Doc. 38) is **GRANTED**. Plaintiffs' claims are hereby **DISMISSED with prejudice**.

SO ORDERED.

SIGNED: December 5, 2019.

*[signature]*
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE